

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

May 19, 2026

**BY ECF**

The Honorable Andrew L. Carter Jr.
United States District Court
Southern District of New York
40 Foley Square
New York, New York 10007-1312

       **Re:** *United States v. Jason Ahmed, et al*, **26 Cr. 97 (ALC)**

Dear Judge Carter:

The Government respectfully submits this letter in opposition to defendant Francheska Doyle's motion for bail. (Dkt. 33.) As set forth in greater detail below, Doyle and her co-conspirators are alleged to have trafficked crack cocaine, heroin, fentanyl, and acetyl fentanyl from a residential neighborhood in the Bronx. Doyle personally helped procure and sell at least one illegal firearm in connection with that conspiracy; an additional firearm as well as ammunition were recovered from the home of one of her co-conspirators; and significant quantities of additional narcotics were recovered by law enforcement from the defendants' homes, including Doyle's apartment, where she and her two minor children resided until her arrest. For these reasons, among others detailed below, Doyle—who proposes that she initially be released to a voluntary in-patient drug treatment program before once again being returned to the residence that served as her base of operations for the conspiracy—is unable to rebut the presumption that no condition or combination of conditions short of detention will reasonably ensure the safety of the community. Accordingly, the Government requests that the Court order the defendant remain detained.

## I. Factual and Procedural Background

### A. The Indictment

On March 16, 2026, a grand jury indicted Doyle and her co-defendants, Mario Villegas, Elizabeth Peralta, Eddie Dume, and Jason Ahmed, with conspiring to distribute fentanyl, acetyl fentanyl, cocaine base, crack cocaine, and heroin, in violation of Title 21, United States Code, Sections 841(b)(1)(A), (b)(1)(B), and (b)(1)(C). (Dkt. 1.) Doyle, Peralta, and Ahmed were also indicted with possession and use of a firearm, in violation of Title 18, United States Code, Section 924(c), in connection with their sale of a firearm that had previously been used in a shooting in Manhattan. As alleged, beginning in at least January 2025, the defendants, who resided in the Bronx, are alleged ot have conspired to acquire and sell a variety of drugs

Page 2

throughout a residential neighborhood in the Bronx.  In connection with that conspiracy, Doyle, Ahmed, Peralta, and Dume either conducted, supervised, or helped facilitate a series of hand-to-hand sales from their residences and nearby locations; Villegas, in turn, operated as one of the conspiracy's main suppliers.

    B.  Arrest and Search of Doyle's Home

Doyle and several of her co-defendants were arrested on March 18, 2026.  (Dkt. 12.)  At that time, law enforcement also executed search warrants on several of the defendants' residences, including Doyle's residence.  As depicted in the belows images, inside Doyle's residence, which she shared with her two minor children, her boyfriend, and—at times—her son and co-defendant Jason Ahmed, law enforcement recovered both drugs and drug-related paraphernalia, including several used crack pipes and straws, additional cocaine residue scattered on the dining room table, several scales, used crack vials, several baggies of crack cocaine packaged for sale, and approximately 70 grams (i.e., distribution weights) of heroin and fentanyl.  The narcotics were scattered unsecured throughout Doyle's apartment, often in plain view; the heroin and fentanyl were stored unsecured in a kitchen cabinet.[1]  Law enforcement also recovered an empty gun holster from Doyle's apartment.



_____

[1] Law enforcement recovered additional narcotics, a firearm, and ammunition from the residences of several of Doyle's other co-defendants, including Villegas.

Page 3



Following her arrest, Doyle consented to an interview with law enforcement. During that interview, Doyle repeatedly lied about her involvement in the charged conspiracy; claimed to have never sold narcotics or firearms to anyone; and lied about the presence of narcotics within her own home, despite law enforcement's subsequent recovery of considerable narcotics and narcotics paraphernalia in plain view. On March 18, 2026, the defendant was presented. *See* Ex. A (transcript of March 18, 2026 bail hearing). Following a home visit ordered by the Honorable Sarah J. Cave, United States Magistrate Judge for the Southern District of New York, Doyle was ordered detained.

## II.     Applicable Law

This Court reviews *de novo* the Magistrate Court's bail determination. *See United States v. Paulino*, 335 F. Supp. 3d 600, 609 (S.D.N.Y. 2018). Thus, "a district judge hearing a bail appeal must exercise its independent judgment, and not defer to the magistrate." *Id.*

Typically, the Government bears a dual burden of proving that the defendant is a flight risk by a preponderance of the evidence and that the defendant is a danger to the community by clear

Page 4

and convincing evidence. *See* 18 U.S.C. § 3142(f); *United States v. Sabhnani*, 493 F.3d 63, 75 (2d Cir. 2007). However, where "there is probable cause to believe that a defendant has committed a crime involving controlled substances that carries a maximum term of imprisonment of ten years or more, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." *United States v. Kirkaldy*, 181 F.3d 83, 83 (2d Cir. 1999) (internal citations and quotations omitted). "Accordingly, in such cases, though the Government still bears the burden of persuasion, it is presumed that the defendant will be detained unless he introduces sufficient evidence to rebut the presumption. The introduction of some evidence by the defendant does not automatically rebut the presumption; instead, the evidence must be weighed along with the factors articulated in 18 U.S.C. § 3142(g)." *United States v. Jackson*, No. 17 Cr. 557 (NSR), 2017 WL 5151665, at \*1 (S.D.N.Y. Nov. 3, 2017). These factors include: (1) "the nature and circumstances of the offense charged;" (2) "the weight of the evidence against the person;" (3) "the history and characteristics of the person;" and (4) "the nature and the seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g).

Importantly, the Second Circuit has "expressly held in several cases that a bail package that might reasonably assure the appearance of [the defendant] at trial, will not reasonably assure the safety of the community." *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001) (citations and quotation marks omitted) (alteration in original). In other words, even conditions that include home detention or incarceration, electronic monitoring, restricted interactions with others, and promises to comply with the requirements of pretrial release do not necessarily alleviate a defendant's danger to the community. *Id.* at 437; *see also United States v. Rodriguez*, 950 F.2d 85, 89 (2d Cir. 1991) (reversing the district court's order of pretrial release despite the defendant's lack of criminal history); *United States v. Orena*, 986 F.2d 628, 632 (2d Cir. 1993) (reversing the district court's order of pretrial release because electronic monitoring and house arrest were insufficient to alleviate the defendant's danger to the community).

The Government may meet its burden "by proffer alone." *United States v. LaFontaine*, 210 F.3d 125, 131 (2d Cir. 2000) (internal quotation marks omitted). "[B]ail hearings are typically informal affairs, not substitutes for trial or discovery" and so "courts often base detention decisions on hearsay evidence." *United States v. Abuhamra*, 389 F.3d 309, 321 n.7 (2d Cir. 2004) (internal quotation marks omitted).

### III.    No Condition or Combination of Conditions Will Reasonably Assure the Safety of the Community from the Defendant

Doyle is a clear danger to the community and should remain detained. Doyle was a core participant in a brazen drug trafficking conspiracy that involved the distribution of several lethal and extremely dangerous narcotics, including cocaine, cocaine base, fentanyl, acetyl fentanyl, and heroin. Doyle herself personally sold some of those narcotics and was found in possession of others upon her arrest; she also helped procure and sell an illegal firearm that had previously been used in a shooting in Harlem. Even the presence of minor children in the defendant's home did not cause the defendant to secure her drugs or the paraphernalia the defendant was using to package and sell those extremely dangerous drugs. While the defendant's efforts to become (and remain) sober are to be commended, they do not merit the defendant's release back into the community.

Page 5

      A. <u>No Condition or Combination of Conditions Will Reasonably Assure the Safety of the Community from the Defendant</u>

      The defendant's actions to date demonstrate that she is undoubtedly a danger to the community.

      First, even assuming the defendant succeeds in rebutting the presumption of detention that applies here—and she cannot—the Court must consider the "nature and circumstances of the offense. . ." 18 U.S.C. § 3142(g)(1). Here, the nature of the original offense conduct weighs heavily in favor of detention. The defendant is charged with conspiring to distribute large quantities of narcotics within a residential neighborhood in the Bronx. The narcotics recovered from the defendant's home were unsecured, and at times, plainly visible to others within the home, including her two children. The defendant's participation in a drug trafficking conspiracy whose object was the acquisition and sale of a variety of drugs, including fentanyl, heroin, and acetyl fentanyl, unquestionably demonstrates utter disregard for the lives of those in her community, who continue to be endangered by the extremely dangerous (and lethal) narcotics possessed and distributed by the defendant and her co-conspirators. The defendant's actions, in turn, were supported by her and her co-conspirators' access to illegal guns, one of which the defendant herself helped procure and sell. But the defendant's actions also seriously endangered the lives of her own children and the other occupants of her home, any one of whom could have been seriously injured or killed from exposure to the narcotics stored there. It is for this reason that courts in this district "regularly find that the distribution of [narcotics] poses a significant danger to the community." *United States v. Arau*, No. 21 Cr. 570 (MKV), 2022 WL 409318, at *2 (S.D.N.Y. Feb. 9, 2022) (collecting cases). This statutory factor alone weighs heavily in favor of detention.

      Second, the evidence against the defendant with respect to the narcotics conspiracy and gun possession count, for which she now faces a fifteen year mandatory minimum, is overwhelming. *See* 18 U.S.C. § 3412(g)(2). The evidence against the defendants include a series of recorded controlled purchases, law enforcement surveillance, reports prepared after each of the controlled purchases, and laboratory reports. That evidence is only compounded by additional evidence of the defendant's participation in the subject offenses, including the scales, drug paraphernalia, additional narcotics recovered from her home and the home of her co-defendants, additional firearms and ammunition recovered from her co-defendants' homes, and evidence obtained from the defendants' cellphones pursuant to judicially-authorized search warrants. This factor undoubtedly weighs in favor of detention.

      In her submission, the defendant argues that her history and characteristics weigh in favor of release. But the defendant's personal characteristics and limited criminal history are not enough to overcome the presumption in favor of detention. The Second Circuit has recognized that it is not necessary for the Government to "present a record of violence or dangerous conduct in order to justify detaining a defendant on grounds of dangerousness." *Rodriguez*, 950 F.2d at 89. While the Government is encouraged by the defendant's efforts to participate in drug treatment therapy, the defendant has ample access to drug treatment programming through the Bureau of Prisons. The defendant's proposal would essentially release her back into the community, premised on her commitment to participate in an entirely voluntary inpatient program, secured only by an electronic

Page 6

monitor, after which the defendant would be returned to the very residence from which she committed the crimes with which she is now charged. As further evidence of the insufficiency of those conditions, while the defendant was under no obligation to speak to law enforcement after her arrest, her troubling lack of candor and her efforts to lie to law enforcement call into serious doubt the likelihood that the defendant will follow Pretrial and the Court's instructions and abide by the terms of her release if the defendant's request is granted.

Finally, the Court must consider "the nature and seriousness of the danger to any person or the community" that the defendant's release would pose. 18 U.S.C. § 3142(g)(4). The defendant is charged with participating in a months-long narcotics trafficking conspiracy involving large quantities of narcotics. As evinced by the weapons recovered from her co-defendant's home, as well as the controlled sale of a gun that the defendant herself personally participated in, members of the conspiracy maintained guns in connection with that conspiracy. This type of conduct fits squarely within the scope of serious danger to any person or to the community. Releasing the defendant on *any* conditions would clearly be inadequate. Instead, "the protection of the community would be left largely to the word of [the defendant] that [she] will obey the conditions," *United States v. Millan*, 4 F.3d 1038, 1049 (2d Cir. 1993). Taken in combination with the defendant's underlying offense conduct, her deliberate decision to exposure her own children by storing drugs in her home, and the defendant's access to guns in connection with her drug trafficking activity, there is little reason to believe that home confinement or a bond will protect the public from the defendant.

Neither the proposed conditions of release nor the arguments offered by the defendant to date rebut or negate the danger the defendant poses to the community. Indeed, as Judge Vyskocil concluded in rejecting a similar bail package in *Arau*, "[e]ven if [the defendant] were placed on home confinement, he could use a phone to coordinate drug transactions, arrange for the sale or transfer of firearms, take possession of narcotics and firearms from or for other gang members, or otherwise communicate with fellow gang members. . . . [I]t is impossible for pretrial services to adequately monitor all of the ways [the defendant] could continue to commit crimes while on home confinement." *Id.* at *4. Taken in combination, no condition or combination of conditions can reasonably ensure that the defendant not only abides by the conditions of her release, but does not return to the drug and gun trafficking activity that led to her arrest.

Page 7

## IV.      Conclusion

For these reasons, the Government respectfully requests that the Court order the defendant detained.

Respectfully submitted,

JAY CLAYTON
United States Attorney

By:   _____
Georgia V. Kostopoulos
Assistant United States Attorney
Southern District of New York
Tel. 212-637-2212

cc:      All counsel of record